John C. Kirkland, State Bar No. 149453
John Moe, State Bar No. 6689
**LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
601 S. Figueroa St., Suite 3900
Los Angeles, CA 90017
Telephone: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorneys for Alleged Debtor
EPD INVESTMENT CO., LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:10-bk-62208-ER |
| EPD INVESTMENT CO., LLC, | Chapter 7 |
| Alleged Debtor. | *Assigned to Hon. Ernest M. Robles* |
| EIN No. xxx-0994 | **ALLEGED DEBTOR'S OBJECTION TO PETITIONING CREDITORS' MOTION FOR APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE** |
| | Date: January 20, 2011<br>Time: 11:00 a.m.<br>Crtrm.: 1568<br>255 East Temple Street<br>Los Angeles, CA 90012 |

Alleged Debtor EPD Investment Co., LLC, a California limited liability company ("EPD"), herby objects to and opposes the Petitioning Creditors' and Creditor Michelle Hansel's Motion For Appointment Of Interim Chapter 7 Trustee, on that grounds that (1) this case was filed in bad faith, and the instant motion is brought in bad faith as a litigation tactic against EPD, (2) petitioning creditors have no standing to initiate an involuntary bankruptcy, because their claims are all in ongoing litigation, and subject to bona fide disputes, (3) the alleged debtor is generally paying its debts as such debts become due, unless such debts are the subject of a bona fide dispute, (4) there is no imminent risk of loss to property of the estate, and no need to the appointment of a trustee, and (5) the appointment of a trustee would destroy EPD's business.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This is a classic bad faith involuntary bankruptcy petition, brought by parties with whom Alleged Debtor EPD Investment Co., LLC, a California limited liability company ("EPD") has been involved in heavily contested litigation for more than a year.  Moving parties are a group of related, disgruntled investors who are unhappy that the investment risks they chose to take have not panned out as they had hoped, and are now lashing out for someone to blame.  Though their cash flow problems are unfortunate, they are hardly unique in today's economy; that is the nature of investing. Moving parties have no one to blame but themselves for their own investment decisions.  Their funds were fully at risk, and EPD owes them nothing.  Athough EPD has done what it can to help them, it has no legal obligation to meet their cashflow shortfalls, and their claims against EPD are without merit.

Indeed, not only are the moving parties' claims against EPD subject to bona fide disputes, they are in fact utterly and completely frivolous.  Having met with no real success pursuing their baseless claims in state or federal court, the moving parties now seek extraordinary relief from the Bankruptcy Court, in a bad faith attempt to bludgeon EPD into capitulation.  Since they cannot prevail on the merits, they seek to extort an undeserved settlement, by putting EPD at risk of financial ruin through a bad faith bankruptcy petition.

The instant motion is based on gross misrepresentations, completely unsupported by the evidence submitted with the application.  There is no valid factual or legal basis for the filing of the involuntary petition, and certainly no urgent need for the appointment of an interim trustee.  As such, there is no conceivable basis for the relief sought by the moving parties.

Conversely, if the instant application were somehow granted, it would trigger the standard bankruptcy default provisions in virtually every contract, loan and other agreement to which EPD is a party, destroy its credit, and effectively put the company out of business.  The loss would be catastrophic.  Indeed, it is not the actions of EPD, but the actions of the Petitioning Creditors that represent the only real threat to the estate.  The motion should be denied, and EPD awarded its fees and costs for opposing it.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   PETITIONING CREDITORS AND CREDITOR MICHELLE HANSEL'S CLAIMS ARE SUBJECT TO BONA FIDE DISPUTE

### A.   All of the Claims Are The Subject of Long-Ongoing Litigation

Moving parties attempt to mislead the Court about the true status of the litigation involving EPD. The claims are not undisputed, and no one has any judgment against EPD. All of the claims are vigorously opposed by EPD, and the actions are strenuously contested. EPD is highly confident that it will prevail in the litigation. Moreover, there is nothing whatsoever that is new, imminent or urgent about any of the lawsuits. The cases have all been pending for months, or even years.

The Jenny Lee Bridal case was filed more than a year ago, on December 1, 2009. (*See* Alleged Debtor's Request For Judicial Notice In Support Of Objection To Petitioning Creditors' Motion For Appointment Of Interim Chapter 7 Trustee ("RJN"), Exh. 2.) Although Jenny Lee previously obtained a surreptitious default, that judgment was set aside. (RJN, Exhs. 3, 5.) EPD strenuously contests liability, and the case is now at issue. (RJN, Exh. 4.)

The Hansel case was also filed more than a year ago, in December 2009. (RJN., Exh. 15.) EPD is vigorously defending, and the case has been at issue as to EPD since March of last year. (RJN, Exh. 17.) Hansel, however, has yet to serve all of the defendants in the case. (RJN, Exh. 14.)

EPD initially opposed Hansel's *repeated* prejudgment attachment requests. (RJN, Exh. 16, 18.) Hansel filed dozens of *ex parte* applications, over every conceivable issue, often refilling the same motion after losing, and always with no notice. (RJN., Exh. 14.) Ultimately EPD grew tired of the litigation and became less strenuous in its oppositions, as the litigation became increasingly cost prohibitive. The Court eventually granted a right to attach order, but subject to a $100,000.00 bond, an indication of the tenuous nature of the claim. Hansel never posted the bond, and now seeks effectively the same relief here, but is asking the Court to set "a bond of zero dollars or in a minimal amount." (Motion, 14:23.) Hansel's bad faith could not be more apparent.

In addition, on November 10, 2010, Jerrold Pressman filed suit against Hansel for defamation, for falsely telling business associates that he and EPD were unable to pay their debts as they become due. (RJN, Exh. 20.) The instant filing is simply round two of those same false claims.

3

1    The Dittmer case has been pending since October 1, 2010. (RJN, Exh. 7.) EPD strenuously

2    contests liability, and it has been at issue since last November. (RJN., Exh. 8.)

3    The Huerth case was filed on August 11, 2010. (RJN., Exh. 10.) No answer has been filed,

4    because EPD has moved to dismiss on multiple grounds. (RJN, Exh. 11.) EPD is vigorously

5    defending. (RJN, Exhs. 12, 13.) In short, all of the claims are contested, all of the litigation is

6    ongoing, and there is no final judgment of any kind against EPD.

7    **B.    The Investments Were Investments, Subject to Risk of Loss**

8    Fundamentally, moving parties are attempting to claim after-the-fact that their at-risk investments

9    were not subject to any risk, and that instead EPD was unconditionally obligated to immediately pay them if

10    anything ever went wrong. Although they attempt to pick and choose individual documents, words and

11    phrases out-of-context, the bulk of the extensive documentary evidence and testimony does not support their

12    version of events.

13    For example, the Declaration of Ruben Moreno filed in the Hansel case refutes all of the factual

14    claims made by Hansel. (RJN, Exh. 18.) As set forth in detail in Mr. Moreno's sworn declaration, the

15    alleged notes were, as noted on their very face, only "Temporary" to facilitate a long-term investment by

16    Hansel in equipment leases. (*See* RJN, Exh. 18 (Moreno Decl.), ¶¶ 3-7 and Exh. "A".)    The

17    temporary loans were in fact converted to such investments. Indeed, Hansel's own tax return **proves**

18    that the $350,000.00 was an at-risk investment, not a loan subject to repayment by EPD. (*Id*., ¶¶ 8-10

19    and Exh. "B".) If the money was not an investment fully at risk, then Hansel has committed tax

20    fraud. (*Id*., ¶ 10.) She reported the $350,000 investment to the IRS as an equipment lease, which was

21    reflected on line 36 of Hansel's 2005 federal income tax return as a $350,000 tax deduction. Obviously a

22    loan is not tax deductible, and the fact that Hansel took a deduction on a tax return filed for the year the

23    "Temporary" note was issued shows that any loan was, in fact, converted to an investment in a lease.[1]

24    Moving parties clearly understood that they were underwriters subject to risk that the lease

25    payments might be interrupted, delayed or unpaid, not lenders with a permanent, unconditional,

26    _____

27    [1] Petitioning Creditors rely upon similar "Deposit Acknowledgements" and "Temporary Promissory
Notes." (*See, e.g*., McCarthy Decl., p. 10.) Such funds were similarly invested into equipment leases.
(*See, e.g*., Arthur Huerth Decl., Exh. "C.")

28

4

immediate repayment right.  (*See, e.g.*, Leslie Huerth Decl., Exh. "B" ("We would like to take this opportunity to welcome you as an <u>investor</u> with EPD Investment Company, LLC.") (emphasis added).  The myriad emails and other miscellaneous documents attached to the various declarations are replete with references to *investments* and *investors*.  Moving parties were more than happy to take advantage of the high returns and tax benefits of their investments for years.  But when the economy turned south, they now want to have their cake and eat it too.  EPD is not obligated to step up and meet their cashflow shortfall simply because the investments they chose are no longer paying like clockwork.

C.    <u>The Creditors Have Failed to Comply with the California Finance Lenders Law</u>

Moving parties are now asserting in the various pending actions that their investments with EPD were not investments at all, but were actually permanent, unconditional loans that had to be repaid immediately, with no risk of loss.  However, if that were the case, the creditors would be lenders, subject to the California Finance Lenders Law.  They are not so licensed, and as such cannot sue to collect on the alleged loans.  *See* Cal. Fin. Code § 22100.

The creditors are caught squarely between a rock and a hard place.  If the funds were investments, then they were at risk, and not subject to an unconditional repayment obligation.  If they were pure loans, then the moving parties are lenders, and subject to the California Finance Lenders Law.  They have failed to comply with the law, and therefore cannot sue to collect any alleged loans.  *See* Cal. Fin. Code § 22100; *Ury v. Jewlers Acceptance Corp*., 227 Cal. App. 2d 11 (1964).

The only exception under California law, as found by any California court, is for making fewer than one loan per year.  *See* Cal. Fin. Code § 22050(e).  If the notes were loans, not investments, then the creditors made multiple loans, and cannot possibly fall within the safe harbor.  They cannot claim that the temporary notes were merely a personal accommodation between friends, and then seek collection like a bank.  Their position is entirely self-defeating.  The internal inconsistency within their own position demonstrates that the claims are subject to a bona fide legal dispute.

1     **III.**     **PETITIONING CREDITORS HAVE NO STANDING TO FILE AN**

2            **INVOLUNTARY BANKRUPTCY PETITION AGAINST EPD**

3         Claims that are involved in litigation are the subject of a bona fide dispute, and creditors

4 holding such claims have no standing to initiate involuntary bankruptcy proceedings. *See, e.g., In re*

5 *Reid*, Bkrtcy, E.D.Va. 1989, 108 B.R. 79 (involuntary Chapter 7 petition dismissed where petitioning

6 creditor's claims were pending in state court action, and thus were subject of bona fide dispute); *In re*

7 *St. Marie Development Corp. of Montana, Inc.*, Bkrtcy.D.Mont.2005, 334 B.R. 663 (petitioning

8 creditors failed to satisfy burden of showing that there was no bona fide dispute as to debts in

9 question, in light of ongoing litigation with debtor). *See also In re Vortex Fishing Systems, Inc.*,

10 C.A.9 2002, 277 F.3d 1057 (petitioning creditors' claims were subject to bona fide dispute, so that

11 creditors were not eligible to join in involuntary petition, where there were factual questions and legal

12 disputes); *In re Reid*, C.A.7 (Ill.) 1985, 773 F.2d 945 (creditors did not have standing to file

13 involuntary petition against debtor where creditors' claims were subject to bona fide dispute); *In re*

14 *Tri-County Farm Equipment Co., Inc.*, D.Kan.1988, 87 B.R. 667 (bona fide where alleged debtor had

15 colorable defenses to claims).

16         The instant case is remarkably similar to *In re Pacific Rollforming, LLC*, Bkrtcy.N.D.Cal.2009,

17 415 B.R. 750, where the court found that the involuntary petition was basically a litigation tactic on

18 part of those that opposed debtor's claims in pending litigation, and that no creditor not involved in

19 litigation against debtor had elected to joint the petition. Such is the case here.

20     **IV.**     **MOVING PARTIES HAVE FAILED TO SHOW THAT EPD IS GENERALLY**

21            **NOT PAYING ITS DEBTS AS THEY BECOME DUE**

22         Moving parties have utterly failed to make any factual showing that EPD is generally not

23 paying its debts as they become due. This is not surprising given that, with the exception of the claims

24 described above and claims of similar ilk which are subject to bona fide disputes, EPD does not have a

25 single past due bill or late payment. In other words, EPD is generally paying its debts as they become

26 due, unless such debts are subject to a bona fide dispute.

27         Moving parties have the burden to prove, by admissible evidence, that EPD is insolvent and

28 bankrupt, and that the estate is at great and immediate risk. *See In re St. Marie Development Corp. of*

6

1  *Montana, Inc.*, Bkrtcy.D.Mont.2005, 334 B.R. 663 (petitioning creditors failed to satisfy burden of

2  showing that alleged debtor was not generally paying its debts as they became due, where no recent

3  debts had been left unpaid).  As such, there is no factual basis for granting the relief requested.

4  The liens about which moving parties now complain were filed <u>more than a year ago</u>, in

5  September 2009.  Moreover, there is nothing unusual or improper about UCC-1 financing statements,

6  which are standard fare in most commercial transactions.  Regardless, the filing of standard financing

7  statements a year-and-a-half ago does not provide any reason to believe that assets are being

8  absconded with or that there is imminent risk of loss to the estate.

9  Indeed, the evidence submitted by moving parties themselves states that EPD has more than

10  $80 million in net assets!  (See Motion, 11:16.)  How does this constitute grounds for filing of an

11  involuntary bankruptcy petition?

12  Aside from the facially ambiguous "temporary" notes and similar conflicting documentation,

13  the only other evidence moving parties have are various emails and letters from EPD, which are

14  inadmissible under Fed. R. Evid. 408.  Moreover, even if such communications were admissible, they

15  essentially say nothing more than that EPD feels bad about the moving parties' investment problems,

16  and is working hard to make the investments pay off and restore regular payments.  That does not

17  mean that the claims now asserted by the creditors are not subject to a bona fide dispute.  The

18  communications from EPD do they establish imminent risk of dissipating assets, but instead show

19  EPD's good faith in continuing to work to try to recover the moving parties' losses.  Such statements

20  do not show bad faith or dishonesty, and cannot be used as a basis to seek appointment of a trustee.

21  In addition, moving parties mischaracterize what the communications from EPD actually say.

22  For example, moving parties quote snippets out-of-context from a year-old December 2009 letter.

23  (Motion at 9:8-19.)[2]  Although the letter candidly discussed a temporary cash flow issue that existed

24  at that time, it did not state that EPD was unable to pay its debts when due.  To the contrary, the only

25  issue was "honoring *requests* for *additional* funds," not meeting required obligations.  (*Id.*)

26  Moreover, in addition to openly acknowledging the problems, the letter also stated:

27  _____

28  [2] Though moving parties assert the letter is from EPD, it is not on letterhead, and is not signed.

That being said, there is some good news. We have lost no tenants, we have prevailed on all tax audits, our properties have maintained or increased in value, and we recently executed a contract for the sale in Mississippi of 100 acres to the state for approximately 3 million dollars (for which we are still awaiting payment), which will allow us to rezone the property and more than double the current value of the remaining 700 acres. …

We have also arranged for a major recapitalization for early September that should generate a substantial amount of liquidity offering a bridge until we can reestablish our credit line. …

Overall our assets greatly exceed our liabilities, and your funds are well protected. …

This is temporary, and I'm hoping and praying it will correct itself in the next quarter.

While I may not have anticipated the enormity of this financial recession, I want to assure you that I have made no critical errors in judgment. None of our investments have lost value even in these turbulent times due to the conservative nature of our strategy. …

(*See* McCarthy Decl., Exh. E.)

Moving parties fail to explain why temporary cash flow problems that occurred more than a year ago warrant a bankruptcy filing or immediate appointment of an interim trustee now. Indeed, there is nothing about this letter from <u>2009</u> which suggests that EPD is *currently* unable to pay its debts when due. The moving parties submit no evidence at all that this is the case. The only alleged debts that are unpaid are the claims of the Petitioning Creditors themselves—which claims are the subject to ongoing litigation, and have been for months or years.

**V.    <u>CONCLUSION</u>**

Moving parties have failed to show that EPD is habitually not paying its debts. There is no evidence that EPD is dissolving or dispersing its assets for the purpose of avoiding payment, nor any explanation of why it would attempt to do so. Moving parties have failed to show any improper conduct, and have shown no evidence of any recent conduct at all. The fact that EPD is not paying a small group of disgruntled investors with whom it is in litigation does not warrant involuntary bankruptcy.

In addition, only in highly unusual circumstances, usually involving proof of dishonesty, is a trustee appointed to take over the debtor's business affairs on an interim basis. Moving parties have made absolutely no showing whatsoever of any such improper conduct by EPD. There is not a scintilla of evidence to support any such accusations.

8

1    The involuntary petition and the instant motion for appointment of an interim trustee are

2    nothing but bad faith litigation tactics by parties involved in ongoing litigation with EPD.  Moving

3    parties have completely failed to meet their burden of proof on any issue.  The motion for appointment

4    of an interim trustee should be denied in its entirety.

5

6    DATED:  January 18, 2011              LUCE, FORWARD, HAMILTON & SCRIPPS LLP

7

8                                        By:  /s/ John C. Kirkland
                                             John C. Kirkland
9                                            Attorneys for Alleged Debtor
                                             EPD INVESTMENT CO., LLC
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28